# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

---

MARGARET BACH and
AARON BACH,

        Plaintiffs,

    v.                                           **Case No. 13-CV-370**

MILWAUKEE COUNTY CIRCUIT COURT,
*Judge Jane Carroll presiding*,
MILWAUKEE COUNTY,
ELIZABETH RUTHMANSDORFER,
LIFE NAVIGATORS,
DISABILITY RIGHTS WISCONSIN, INC.,
DEWEY MARTIN,
MOERTL WILKINS & CAMPBELL S.C.,
DENICE MADER, LYNN WAGNER,
MAUREEN McGINNITY,
FOLEY & LARDNER LLP,
CHRISTINE GABOR, KATIE DOMER,
EASTER SEALS OF SOUTHEAST WISCONSIN, INC.,
KRISTA BUCHHOLTZ,
WILSON ELSER MOSKOWITZ EDELMEN & DICKER LLP,
GARY STARK,
MILWAUKEE COUNTY MENTAL HEALTH COMPLEX,
SCOTT McCARDELL, BRIDGES LLC,
JULLIAN GOGGANS, and
MILWAUKEE POLICE DEPARTMENT,,

        Defendants.

---

## DECISION AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

---

Plaintiff, Margaret Bach ("Bach"), is the mother of Aaron Bach, a disabled adult who is in

the custody and care of Milwaukee County. On April 2, 2013, she filed a complaint against the

Milwaukee County Circuit Court, Judge Jane Carroll, Milwaukee County, Elizabeth

Ruthmansdorfer, Life Navigators, and Disability Rights Wisconsin. (Docket # 1 at 1, 12.) The original complaint stemmed from a May 12, 2012 Guidelines for Visits Between Aaron and his Mother ("Visitation Guidelines") set by Milwaukee County, Life Navigators (Aaron's guardian), Elizabeth Ruthmansdorfer (Aaron's *guardian ad litem*), and Disability Rights Wisconsin as well as an October 16, 2012 Milwaukee County Circuit Order ("Court Order"). In the original complaint, Bach asked the court (1) to void the Visitation Guidelines and Court Order; (2) to order daily visits with Aaron; (3) to order monetary damages for negligent infliction of emotional distress; (4) to appoint a new *guardian ad litem* for Aaron; (5) to allow Bach to amend her complaint; (6) to take jurisdiction from the Milwaukee County Circuit Court; and (6) to enjoin the State from moving Aaron to an unsafe group home. (*Id.* at 16.)

Bach also filed a motion to proceed *in forma pauperis* (Docket # 2), which this Court denied (Docket # 22). In denying her motion, the Court also found Bach's original complaint to be deficient. (*Id.* at 4-8.) The order explained to Bach that the claims she brought on Aaron's behalf could not be sustained as she cannot advance claims on Aaron's behalf. (*Id.* at 4.) This Court also explained to Bach that much of the relief she sought is "not within the purview of this Court" as "[t]he authority to order daily visitations and appoint guardians is only available in the State courts or the Supreme Court," (*id.*) and explained that several of the defendants against whom she made claims were immune from liability (*id.* at 7). The Court then granted her leave to amend her complaint as to the claims over which the Court had potential subject-matter jurisdiction: that the challenged Court Order and Guidelines violated her First Amendment rights to access to the court, to free speech, and to protest or picket and that the Guidelines and Court Order are retaliatory. (*Id.* at 5.) The order explained what elements needed to be alleged for each type of claim (*id.* at 5-7), and it also provided

- 2 -

the general pleading standard under Fed. R. Civ. P. 8(a)(2) (*id.* at 5). Particularly, the order told Bach that "[t]he amended complaint must state claims authorized by the Constitution or by federal statute vindicating her own rights, not that of her son, must seek relief within the authority of this Court, and to the extent it seeks monetary damages, must not do so against defendants who are immune." (*Id.* at 8.)

Bach filed an amended complaint on May 31, 2013. (Docket # 23.) The amended complaint adds defendants and lists Bach's son, Aaron, as a plaintiff. (*Id.*) Along with her amended complaint, Bach filed an amended motion for a TRO and for a temporary injunction. (Docket # 24.) The motion was referred to the Honorable J.P. Stadtmueller (Docket # 29) and was denied (Docket # 30). In the order denying the motion, the court explained that Bach cannot bring claims on behalf of Aaron and that the *Rooker-Feldman* doctrine prohibits federal collateral review of state court decisions. (Docket # 30 at 3-4.)

Since filing her amended complaint, Bach also filed a motion asking this Court to void a state court order that prevented her from receiving various hearing transcripts. This Court denied the motion, explaining that the federal district courts do not have the jurisdiction or authority to order the relief that she requested. (Docket # 72.)

Currently before the Court are the defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6). (Docket # 44, 46, 48, 50, 54, 59, 63.) The motions have been fully briefed and are ready for disposition. For the reasons that follow, the defendants' motions will be granted.

## STANDARD OF REVIEW

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint

must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court should engage in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

## ANALYSIS

In assessing whether Bach's amended complaint states a claim, or claims, upon which relief may be granted, the Court will begin by determining whether the amended complaint properly addresses the deficiencies outlined in the order denying Bach's motion to proceed *in forma pauperis*.

- 4 -

None of Bach's claims directly state she is seeking relief for violations of her First Amendment rights or for retaliation, though she does ask this Court to provide declaratory relief finding that her complaint creates a valid Section 1983 claim. In her amended complaint, Bach asks the court: (1) to rule on the amended TRO [temporary restraining order]; (2) to appoint a new *guardian ad litem* ("GAL") to represent Aaron; (3) to void the three orders from May 12, 2012, October 16, 2012, and April 15, 2013 and provide injunctive relief or declaratory relief that finds the orders illegal; (4) to sanction all of the attorneys who supported the orders; (5) to provide declaratory or other relief that this is a valid Section 1983 claim; (6) to award damages for negligent infliction of emotional distress against all applicable parties; (7) to allow Bach to amend her complaint for all previous valid lawsuits the October 16, 2012 Order prevented her from filing; and (7) to take jurisdiction over the case because the state circuit probate court has lost its jurisdiction and because the case involves federal questions.

### Claims Brought on Aaron's Behalf

As has been explained to the plaintiff by the Seventh Circuit and by this Court, though she is a lawyer, she is not Aaron's lawyer; she cannot bring claims on his behalf. *See Bach v. Milwaukee County*, 490 Fed. Appx. 806, 807 (7th Cir. 2012) (explaining that only Aaron's guardian and *guardian ad litem* "are authorized to act on his behalf" and must authorize his being a party to a lawsuit). Therefore, to the extent that Bach alleges facts that support claims on Aaron's behalf, those allegations will not be considered when determining the sufficiency of the complaint. Similarly, any claim made on Aaron's behalf must be dismissed as Bach is not authorized to bring those claims.

- 5 -

**The *Rooker-Feldman* Doctrine and Preclusion**

Similarly, Bach is challenging a state court order and visitation guidelines, claims that a federal court cannot address. *See Bach*, 490 Fed. Appx. At 807 (explaining that though "[c]ustody and guardianship decisions are open to change," such orders are not any "less 'final' for purposes of the *Rooker-Feldman* doctrine (or any other purpose)."). The order denying Bach's motion to proceed *in forma pauperis* and granting her leave to amend her complaint directed her to include only those claims that arise under the Constitution and/or under federal statutes. In her amended complaint, Bach asserts that the case "is about two illegal actions taken by the defendants to retaliate against [Bach] for exercising [her] right to free speech and access to the courts." (Am. Compl., Docket # 23 at ¶ 1.) Particularly, Bach alleges that the May 12, 2012 Visitation Guidelines and the October 16, 2012 Court Order are "illegal" and must be voided. (*See id.* at ¶ ¶ 1, 3, 5, p. 48.) She challenged the Visitation Guidelines and Court Order in her original complaint (*see* Docket # 1), which, as already noted, this Court found to be deficient (*see* Docket # 22).

As was explained by the Seventh Circuit in her prior law suit, as well as in the present case, federal courts are courts of limited jurisdiction. Additionally, Judge Stadtmueller explained in his order denying Bach's motion for a TRO and injunction that both "[t]he *Rooker-Feldman* doctrine and the law of preclusion operate in this case as they operated in Ms. Bach's prior case [in the Eastern District of Wisconsin], barring collateral federal review of the state court's orders." (Docket # 30 at 4.) Under the *Rooker-Feldman* doctrine, "federal courts, other than the Supreme Court, do not have jurisdiction to review decisions of state courts in civil cases." *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008) (internal citations omitted). Thus, federal courts lack "subject matter jurisdiction where a party, dissatisfied with a result in state court, sues in federal court seeking to set aside the state-court

- 6 -

judgment and requesting a remedy for an injury caused by that judgment." *Id.* at 568 (internal citations omitted); *see also Ritter v. Ross*, 992 F.2d 750, 754-55 (7th Cir. 1993) (holding that where the plaintiff would have no injury "but for" the state court order, *Rooker-Feldman* bars subject matter jurisdiction). Here, Bach asks this Court to do just that: to void a state court order and redress injuries she alleges have resulted from the order.

It is not enough for Bach to characterize her claims as civil rights claims. *See Johnson*, 551 F.3d at 568. Rather, the court must "discern the *actual injury* claimed by the plaintiff" by "look[ing] beyond the four corners of the complaint." *Id.* (citing *Remer v. Burlington Area Sch. Dist.*, 205 F.3d 990, 997 (7th Cir. 2000)). By examining Bach's complaint, attachments/appendix, affidavits, and briefs, it is evident that the injury of which she primarily complains concerns her son's guardianship and placement. She continually references Aaron's placement conditions, the danger she believes he is in, and her inability to contact or speak with Aaron's care providers. Her requested relief is further evidence that the nature of Bach's claims do not concern claims that arise under the United States Constitution or under federal statute. It is clear that Bach's primary complaint concerns not her constitutional rights but rather the care her son is receiving, and she is therefore seeking relief that this Court cannot provide. She is, in short, seeking a remedy for an alleged injury caused by a state court order, and the *Rooker-Feldman* doctrine dictates that this Court lacks subject matter jurisdiction over such claims. Therefore, the relief that Bach requests cannot be granted by this Court, and her claims regarding Aaron's guardianship, placement, and visitation rights must be dismissed for lack of subject matter jurisdiction.

Furthermore, as the Seventh Circuit explained in her prior lawsuit, this Court also lacks jurisdiction over Bach's "claims against persons or entities that were not parties to the guardianship

- 7 -

proceedings" under the law of preclusion—rather than the *Rooker-Feldman* doctrine. *Bach*, 490 Fed. Appx. At 808 (citing *Lance v. Dennis*, 546 U.S. 459 (2006) (explaining that the "*Rooker-Feldman* [doctrine is] inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding")). Therefore, this Court lacks jurisdiction over her claims as they pertain to Aaron's custody and placement and Bach's visitation and contact rights against those defendants that were not parties to the underlying state court orders.

### Federal Claims

As stated earlier, this Court granted Bach leave to properly develop: her First Amendment claims regarding access to the courts, to free speech, and to protest or picket, as well as a Section 1983 retaliation claim. (Docket # 22 at 5-6.)

As for a claim that her access to the courts has been restricted, Bach must show that she suffered an "actual injury," *Lewis v. Casey*, 518 U.S. 343, 351 (1996), which means that she was hindered in pursuing a non-frivolous lawsuit, *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). This claim can be forward or backward looking. For a forward-looking claim, the plaintiff must allege that a "systemic official action frustrates [the] plaintiff or plaintiff class in preparing and filing suits at the present time." *Id.* at 413. For a backward-looking claim, Bach must show that the defendants caused her to lose a meritorious claim, a chance to sue on a meritorious claim, or a chance to seek some particular order of relief. *Id.* at 414. A plaintiff must (1) describe an underlying non-frivolous claim and (2) explain how her ability to file or litigate the claim was or will be lost or impeded. *Id.* at 415–16.

- 8 -

To state a claim that an injunction violates her First Amendment right to picket, Bach must allege facts that show the injunction burdens more speech than is necessary to serve a significant government interest. *See Madsen v. Women's Health Center*, 512 U.S. 753, 765 (1994).

Finally, for a Section 1983 retaliation claim, Bach must allege facts that tend to show: (1) that she was deprived of a right secured by the Constitution or laws of the United States and (2) that the person who deprived her of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). More specifically, for retaliation of First Amendment right claims under 42 U.S.C. §1983, a plaintiff must show that (1) she engaged in constitutionally protected speech; (2) the defendants, as public officials, engaged in adverse conduct against her; and (3) the defendants were motivated, at least in part, by her protected speech. *Bivens v. Trent*, 591 F.3d 555, 559 (7th Cir. 2010).

For the sake of completeness, and because Bach continues to file lawsuits, in most instances against the same defendants, the Court will examine whether Bach has stated a claim against each of the defendants she lists in her amended complaint. To state a claim, as noted above, Bach must plead "enough facts to state a claim to relief that is plausible on its face" to meet the requirement of Fed. R. Civ. P. 8(a). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

     *1.     Milwaukee County Circuit Court*

The Milwaukee County Circuit Court is not a suable entity because it is an arm of the state. Therefore, it is not a person for purposes of Section 1983. *See, e.g.*, *Griffin v. City of Milwaukee*, No. 2010 WL 4723420, *8 (E.D. Wis. Nov. 15, 2010) (dismissing claims against Milwaukee County Circuit Court because it is not a person within the meaning of Section 1983). Furthermore, because the circuit court is an arm of the State, it is immune from suit under the Eleventh Amendment. *See Griffin v. Kentucky*, 473 U.S. 159, 167 n.14 (1985) (explaining that "a state cannot be sued directly in

its own name regardless of the relief sought" unless the State waived Eleventh Amendment immunity or "Congress has overridden it"). Therefore, any claims against the Milwaukee County Circuit Court are dismissed.

2. *Judge Jane Carroll*

As was explained to Bach in the order denying her petition to proceed *in forma pauperis*, judges enjoy judicial immunity, which means that judges generally have absolute immunity for judicial actions taken within their court's jurisdiction. *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985). Moreover, judicial immunity is not just immunity from damages; it is immunity from suit all together. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Though there are two exceptions to immunity—where the act is nonjudicial in nature or where the judge's action, though judicial, are done in the absence of jurisdiction—Bach's alleged facts do not comport with the exceptions. Judge Jane Carroll was acting within her judicial capacity in signing the October 16, 2011 Court Order that Bach challenges, and she therefore is absolutely immune from suit. Any claim against Judge Jane Carroll is therefore dismissed.

3. *Elizabeth Ruthmansdorfer*

As to Elizabeth Ruthmansdorfer, any potential Section 1983 claim cannot be raised against her "because a guardian ad litem is not a state actor subject to liability under 42 U.S.C. § 1983." *Lane v. Milwaukee Cnty. Dept. of Soc. Services Children and Family Div.*, No. 10-CV-297-JPS, 2011 WL 5122615, *4 (E.D. Wis. Oct. 28, 2011); *see also Nelson v. Kujawa*, No. 07-C-741, 2008 WL 2401260, *2 (E.D. Wis. Jun. 11, 2008). Alternatively, Ruthmansdorfer would be entitled to quasi-judicial immunity. *See Lane*, 2011 WL 52122615, *2 n.4; *see also Paige K.B. by Peterson v. Molepske*, 219 Wis. 2d 418, 424, 580 N.W.2d 289, 292 (1998) (explaining that guardians ad litem enjoy quasi-judicial

- 10 -

immunity from negligence liability for acts performed within the scope of their duties). As plaintiff acknowledges, the only exception is if Ruthmansdorfer was acting outside the scope of her guardianship. *See Jones v. Brennan*, 465 F.3d 304, 309 (7th Cir. 2006) (internal citations omitted) (explaining that guardians ad litem "can be sued if they step outside the scope of their agency and engage in self-dealing). The amended complaint does not allege that Ruthmansdorfer acted outside her role as *guardian ad litem*. Therefore, any claim against Ruthmansdorfer is dismissed.

### 4. Krista Bucholz and Wilson Esler Moskowitz Edelman & Dicker LLP

The only allegation pertaining to Krista Bucholz (sued as "Buchholtz" and "Buchholz") is that she was present at the October 16, 2012 hearing where the Court Order that Bach contests was signed. (Am. Compl., Docket # 23 at 19-20, ¶ 13.) Wilson Esler Moskowitz Edelman & Dicker LLP ("Wilson Esler") only appears in the list of defendants. (*See id.* at 14.) Bach, therefore, has failed to state any claim as to either Bucholz or Wilson Esler, and any claim against either defendant is therefore dismissed.

### 5. Christine Gabron

The only facts Bach alleges that pertain to defendant Christine Gabron are that she was present at the October 16, 2012 hearing, at which Judge Carroll signed the contested Court Order and Gabron served as Aaron's adversary counsel. (Am. Compl., Docket # 23 at 20, ¶ 13.) Though Bach challenges the Court Order, she has not demonstrated that Gabron's actions somehow constitute an actionable Section 1983 claim, or that Gabron is even a state actor, which is necessary for bringing a Section 1983 claim. Therefore, any claim against Gabron is dismissed.

- 11 -

6.   *Disability Rights Wisconsin, Inc.*

Bach alleges that Disability Rights Wisconsin, Inc. ("DRW") "negotiated a list of stringent guidelines for [her] to be able to visit or talk to her son" along with Milwaukee County, Life Navigators, Inc., and Elizabeth Ruthmansdorfer. (Am. Compl., Docket # 23 at 16, ¶ 3.) Bach also lists DRW as Christine Gabron's employer. (*Id.* at 20, ¶ 13.) Though Bach alleges that the guidelines violated her right to free speech, privacy, and her freedom of association, this conclusory allegation cannot support any claim against DRW. Therefore, any claims against DRW are dismissed.

7.   *Dewey Martin*

Dewey Martin is mentioned only once in Bach's amended complaint: where Bach alleges that Martin was present at the October 16, 2012 hearing where the contested Court Order was signed. (Am. Compl., Docket # 23 at 20, ¶ 13.) As with DRW, Bach's conclusory allegation that the Court Order violates her constitutional rights does not create a plausible claim against Martin. Therefore, any claims against Martin are dismissed for failure to state a claim.

8.   *Milwaukee County*

To state a Section 1983 claim against a municipality, a plaintiff must demonstrate that the supposedly unconstitutional actions were done pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690 (1978). Nearly all of Bach's allegations regarding Milwaukee County pertain to Aaron's care, guardianship, and placement (*see* Am. Compl, Docket # 23 at p. 21, ¶ 15; p, 27, ¶ 27; p. 31, ¶ 44), which, as this Court has explained, cannot be challenged in federal district court. Though she alleges that she "believe[s] Milwaukee County has influenced each named defendant to violate [her] constitutional rights, as well as [her]

- 12 -

disabled sons [sic] for economic reasons" (*id.* at 16, ¶ 1) this conclusory allegation does not create any plausible Section 1983 claim that allows for municipal liability.

9.    *Milwaukee County Mental Health Complex and Milwaukee Police Department*

Any claims against the Milwaukee County Health Complex ("MCHC") and the Milwaukee Police Department ("MPD") must be dismissed because neither the MCHC nor the MPD can be sued separately from Milwaukee County. *See Grow v. City of Milwaukee*, 84 F. Supp. 2d 990, 995-96 (E.D. Wis. 2000) (internal citations omitted) (explaining that the Milwaukee Police Department "is not a suable entity separate from the city"). Therefore, any claims against the MCHC or MPD are dismissed.

10.    *Dr. Gary Stark*

Bach alleges that Dr. Gary Stark "refused to communicate with her" regarding Aaron's care. (Am. Compl., Docket # 23 at 21, ¶ 17.) She does not allege how Dr. Stark's actions deprived her of her constitutional rights. Though she also alleges that Dr. Stark "repeatedly referenced how Aaron's situation was different, political, and they had to follow the guardian's wishes regardless of the law" (*id.*), Bach has failed to state a claim against Dr. Stark. Therefore, any and all claims against Dr. Stark are dismissed.

11.    *Katie Domer*

Bach's amended complaint fails to mention Katie Domer in any of her factual allegations, though Domer is listed among the defendants and as an employee of Easter Seals. (Am. Compl., Docket # 23 at 14.) Bach, therefore, has failed to state any claim against Domer.

- 13 -

12. *Easter Seals of Southeast Wisconsin, Inc.*

Bach's amended complaint contains two particular allegations against Easter Seals of Southeast Wisconsin, Inc. ("Easter Seals"). First, Bach alleges that Easter Seals supported the "guardian's restrictions" and refused to give her the address or phone number for where they were taking Aaron "[t]he night Aaron was taken." (Am. Compl., Docket # 23 at 22, ¶ 18.) Second, Bach alleges that Easter Seals moved Aaron to a group home, did not contact her, and Aaron was moved to the Mental Health Complex due to the group home being unsafe. (*Id.* at 26, ¶ 26.) These allegations pertain to Aaron's care and placement, not to Bach's own constitutional rights. Therefore, Bach has not alleged facts that create a plausible constitutional claim against Easter Seals.

13. *Moertl Wilkins & Campbell, S.C.*

Bach has failed to allege any facts that pertain to Moertl Wilkins & Campbell, S.C. ("Moertl Wilkins"). Bach, therefore, has failed to state any claim against Moertl Wilkins, and all claims against it are therefore dismissed.

14. *Foley & Lardner, LLP*

Foley & Lardner, LLP appears nowhere in the complaint besides in the list of defendants. (*See* Am. Compl., Docket # 23 at 14.) Bach alleges no facts that pertain to Foley & Larder, and therefore, any claim against it cannot be sustained. Any claim against Foley & Lardner, LLP is therefore dismissed for failure to state a claim.

15. *Life Navigators, Inc.*

Life Navigators, Inc. ("LNI") is Aaron's appointed legal guardian. (*See* Am. Compl., Docket # 23 at 16, ¶ 3.) Bach alleges that LNI "negotiated a list of stringent guidelines for Margaret to be able to visit or talk to her son." (*Id.*) She alleges that these guidelines violate her rights to free speech,

- 14 -

privacy, and freedom of association.[1] (*Id.*) Bach mentions LNI when explaining why her contact with

Aaron is important (*see id.* at p. 26, ¶¶ 25, 26) and when discussing why LNI should not be extended

immunity (*id.* at p. 44, ¶¶ 63-65, 68). Bach's claims against LNI must be dismissed, however. As has

been explained, this Court does not have jurisdiction to void state court orders, so the only remaining

claims are those arising under Section 1983. These allegations do not, even when construed in her

favor, create a plausible claim against LNI. Therefore, any claims against LNI are dismissed for

failure to state a claim.

### 16.  Denice Mader

Though Bach lists Denice Mader as a defendant in her amended complaint, the body of the

complaint does not allege any facts pertaining to Mader. Therefore, Bach has failed to state any of

her potential constitutional claims against Mader, and any claim against her is hereby dismissed.

### 17.  Maureen McGinnity

The only facts Bach alleges regarding Maureen McGinnity are that she is counsel for Life

Navigators and that she was present at the October 16, 2012 hearing when the Court Order Bach

challenges was issued. (*See* Am. Compl., Docket # 23 at p. 19-20, ¶ 13.) These facts do not state a

claim "that is plausible on its face" against Maureen McGinnity. McGinnity's presence at the hearing

where the contested state court order was signed does not suffice to allege any of Bach's potential

constitutional claim. Any and all claims against McGinnity are therefore dismissed for failure to state

a claim.

---

[1]      Bach also alleges that the Visitation Guidelines violate Aaron's rights, too. (Am. Compl. Docket # 23 at 16, ¶ 13.) As has already been explained, however, Bach cannot bring claims on Aaron's behalf.

18. *Lynn Wagner*

Like Denice Mader, Bach does not allege any facts pertaining to Lynn Wagner. Though Wagner is the recipient of several emails Bach attached to her amended complaint, these emails pertain to Aaron's care and Bach's ability to communicate with Aaron's care givers. Though several of the emails mention picketing (*see* Docket # 23-1 at 12, 13), Wagner is not the party responsible for the Court Order. Therefore, Bach has failed to state a claim against Wagner, and any claim against her is dismissed.

19. *Julian Goggans*

Officer Julian Goggans is, according to Bach, added as a defendant in her amended complaint because he "assumed a more stringent order was in place [than the October 16, 2012 Court Order] without verification, enforced a restraining order that did not/does not exist, and threatened Margaret Bach with arrest." (Am. Compl., Docket # 23 at 16, ¶ 2.) The first interaction Bach alleges she had with Officer Goggans occurred when she called the police to have them check on Aaron in his group home. (*Id.* at p. 23, ¶ 21.) She alleges that after Officer Goggans spent about five minutes in the group home, he came out to advise her that he felt it was a waste of time. (*Id.*) Bach further alleges that Officer Goggans told her that she was violating a restraining order by being there but would not write her up and recommended she park around the corner next time. (*Id.*) The second interaction Bach alleges she had with Officer Goggans occurred the next day, after Bach dropped off a friend of Aaron's at Aaron's group home, along with dinner. (*Id.* at 24, ¶ 22.) She alleges that she went over to the park with her dogs, at which time Officer Goggans called her and demanded to know where she was. (*Id.* at 24, ¶ 23.) She further alleges that Officer Goggans then came to the park and instructed her to return to her car. (*Id.*) Bach states that Officer Goggans told her this violated

- 16 -

a restraining order, which she told him did not exist. (*Id.*) She alleges that Officer Goggans threatened her with arrest but told her he would not give her a citation because he did not have the restraining order in front of him. (*Id.*) Bach alleges that she then told Officer Goggans he was infringing on her Fourteenth Amendment rights. (*Id.*) She also alleges that as she and Aaron's friend left, Officer Goggans told her that he would arrest her for disorderly conduct if she was ever in the area again. (*Id.*)

Bach attempts to argue in her response brief that she was illegally seized and that her Fourteenth Amendment rights—particularly her right to equal protection—were violated, adding additional facts.[2] (*See* Docket # 86 at 2.) Bach does not argue that she was falsely arrested (there was no arrest). Rather, she argues that she was seized because Officer Goggans did not have "probable cause to stop [her], den[ied] her liberty to be in a public park, and threaten[ed] her with arrest for disorderly conduct." (*Id.* at 4.) The crux of Bach's Fourth Amendment claim, therefore, is that Officer Goggans did not have probable cause to stop her. Her allegations regarding the park and threat of arrest speak more to her claim under Equal Protection, which will be discussed below. A person is seized for purposes of the Fourth Amendment when the particular police conduct occurring in the particular setting prompts a reasonable person to conclude that he is not free to leave the officer's presence. *United States v. Clements*, 522 F.3d 790, 794 (7th Cir. 2008) (citing *Brendlin v. California*, 551 U.S. 249 (2007); *United States v. Hendricks*, 319 F.3d 993, 1000 (7th Cir. 2003)). Put another way, a person is seized only when a reasonable person in the same circumstances would not feel free to "disregard the police and go about [her] business." *California v. Hodari D.*, 499 U.S. 621,

---

[2]      Bach also argues that Officer Goggan's action "affect[ed] free speech." (Docket # 86 at 6.) However, Bach argues that her son's friend, Mike, has not returned to visit Aaron since the incident, creating an actionable First Amendment claim. (*Id.*) Bach is not authorized to bring claim on behalf of Mike, and even if she were so authorized, she has alleged no facts supporting a First Amendment claim.

- 17 -

628 (1991). The standard is an objective one, and neither the individual's nor the officer's subjective beliefs are "determinative to whether a seizure occurred." *Carlson v. Bukovic*, 621 F.3d 610, 619 n.15 (7th Cir. 2010).

Neither of the alleged encounters between Officer Goggans and Bach resulted in Bach being seized for Fourth Amendment purposes. In the first encounter, Bach called the police, which resulted in Officer Goggans going to Aaron's group home. When he left, he advised Bach that he would not write her up for violating a restraining order[3] at that time but advised her to park her car around the corner next time. Nothing about this encounter with Officer Goggans would result in a reasonable person believing that she could not leave the officer's presence or go about her business.

Bach's subsequent encounter with Officer Goggans did not result in Bach being seized, either. According to Bach, Officer Goggans instructed her to leave the park; he did not attempt to keep her in his presence, handcuff her, or apply physical force. Bach's complaint that she was told to leave the park does not transform the encounter into a seizure; a reasonable person would feel free to go about her business (even if she was instructed to go elsewhere). Similarly, Officer Goggan's statement that he would arrest Bach for disorderly conduct if she were to return to the park does not transform the encounter into a seizure. Simply put, on both occasions, Bach was instructed to leave; she was not commanded to stay in the officer's presence. Therefore, even construing the facts alleged in the complaint in the light most favorable to Bach, she has failed to state a Fourth Amendment unreasonable seizure claim.

---

[3] Bach vigorously contests the existence of a restraining order. A portion of the October 16, 2012 order does enjoin her from communicating with Aaron's care providers or prospective care providers except in three limited circumstances: (1) in the event of an emergency; (2) regarding the logistics of her authorized visits with Aaron; and (3) regarding matters unrelated to Aaron's care and treatment.

Bach has also failed to state an equal protection claim. She alleges that Officer Goggans'
command to leave the park and not walk her dogs on the sidewalk deprived her of equal protection
rights. Bach's claim relies on the "class of one" equal protection doctrine, and in order to state a
claim, she must "show 'that she has been intentionally treated differently from other similarly
situated and that there is not rational basis for the difference in treatment.'" *D.B. ex rel Kurtis B. v.
Kopp*, No. 12-2818, ___ F.3d ___, 2013 WL 3957576*, *4 (7th Cir. Aug. 2, 2013) (citing *Village of
Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). In order for "[a] class-of-one plaintiff
. . . to get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, a plaintiff
must allege facts sufficient to overcome to presumption of rationality that applies to government
classifications."[4] *Id.* at *5 (internal citations and quotations removed).

Bach has not shown that she was treated differently from those similarly situated from her,
nor has she shown that Officer Goggans necessarily lacked a rational basis for asking her to leave the
park. According to Bach, Officer Goggans' actions were motivated, at least in part, by his
belief—whether or not it was mistaken—that Bach was violating a restraining order. At most, Bach's
allegations amount to a showing of poor judgment (and perhaps misunderstanding) on Officer
Goggans' part, "[b]ut poor judgment does not violate the Constitution." *Id.* at *6. Bach has failed to
state an equal protection class-of-one claim; it is therefore dismissed.

---

[4]     It is worth noting that since the Supreme Court's *Olech* decision, the Seventh Circuit has
not reached a consensus on "the role of illegitimate motive or improper purpose in class-
of-one litigation." *Id.* The court has split three ways: some members believe the "plaintiff
should be required to plead and prove that the disparate treatment was motivated by
personal ill will or other illegitimate purpose; that is, a purpose unrelated to public duty;"
another group believe that improper motive or personal animus is simply a way to prove
that the defendant lacked a rational basis for treatment; and finally, one member has
concluded that motive and intent should play no role at all. *Id.* at *4-5 (citing *Del Marcelle
v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012)). Because Bach cannot meet the *Olech*
elements, however, the question of motive and/or intent is irrelevant.

**State Law Claim**

Bach also makes a negligent infliction of emotional distress claim against "all applicable parties," a state law claim requiring her to show (1) negligent conduct; (2) causation; and (3) injury (severe emotional distress). *See Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 654, 517 N.W.2d 432, 443 (1994). All of Bach's other claims have been dismissed, and "[t]he 'general rule is that when . . . the federal [claims drop] out before trial . . . the federal district court should relinquish jurisdiction over the supplemental claim.'" *Stayart v. YAHOO! Inc. et al*, 651 F. Supp. 2d 873, 886 (E.D. Wis. 2009) (citing *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997); 28 U.S.C. § 1367). An exception to this general rule, however, allows a federal court to maintain jurisdiction "when 'it is obvious how the [claim] should be decided." *Id.* (citing *Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007)). Because there are no federal claims, the Court will decline to maintain supplemental jurisdiction over any supplemental claims.

**Request for Order Restricting Bach's Filing**

Finally, several of the defendants request that Bach be barred from filing further federal actions or that restrictions on filing, similar to those imposed in state court, be imposed. (Docket # 45 at 13; Docket # 60 at 14.) Undisputedly, the court has the inherent authority to limit plaintiff's access to court due to excessive and frivolous litigation. *See, e.g.*, *In re Anderson*, 511 U.S. 364, 365-66; *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186-87 (7th Cir. 1995). The Court must ensure that "[f]rivolous, vexatious, and repeated filings by *pro se* litigants [do not] interfere with the orderly administration of justice by diverting scarce judicial resources from cases having merit and filed by litigants willing to follow court orders." *United States ex rel. Verdone v. Circuit Court for Taylor Cnty.*, 73 F.3d 669, 671 (7th Cir. 1995). In doing so, the courts have the power to issue injunctions imposing

- 20 -

pre-filing restrictions on vexatious litigants. *See, e.g.*, *McCready v. Ebay Inc.*, 453 F.3d 882, 892-93 (7th Cir. 2006) (ordering a vexatious *pro se* litigant to show cause why he should not be barred from filing papers in the federal courts of the Seventh Circuit for a period of at least two years); *see also Support Sys. Int'l, Inc.*, 45 F.3d at 186-87 (imposing a two-year prohibition of new filings in the federal courts of this Circuit on a vexatious litigant).

In this case, as Judge Stadtmeuller aptly phrased it in his order, "Ms. Bach is no stranger to the federal courthouse." (Docket # 30 at 2.) These lawsuits consume resources of the defendants, who are mostly non-profits and government entities, as well as the court's resources. As the defendants note, Bach has engaged in a repeated pattern of filing lawsuits against those responsible for her son's care. Thus, the defendants' motion is not meritless. However, the Court declines to enter such an order at this time. But, plaintiff is hereby put on notice of the court's authority to enter such orders.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motions to dismiss (Docket # 44, 46, 48, 50, 54, 59, 63) are hereby **GRANTED** and the case is **DISMISSED**.

**IT IS ALSO ORDERED** that the plaintiff's motions to appoint a *guardian ad litem* for Aaron Bach (Docket # 4, 25) are **DENIED**.

**IT IS ALSO ORDERED** that the plaintiff's request to compel police reports (Docket # 88) is **DENIED**.

**IT IS ALSO ORDERED** that the plaintiff's motion for default judgment against defendants Scott McCardell and Bridges of Wisconsin, Inc. (improperly names "Bridges LLC") (Docket # 89) is **DENIED**.

**IT IS ALSO ORDERED** that the motions to strike (Docket # 120, 132) are **GRANTED** to the extent that Docket # 114, 115, 117, and 125 are unauthorized sur-replies to the defendants' respective motions to dismiss. The plaintiff did not properly seek permission from the Court before filing any sur-reply. To the extent the briefs deal with other matters, they have been considered by the Court.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of September, 2013.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge